**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**OBERON SECURITIES, LLC,**

**Plaintiff,**

**- against -**

**PRIMARY HEALTH PROPERTIES PLC and PHP PROPERTY MANAGEMENT SERVICES LIMITED,**

**Defendants.**

**26-cv-6542 (JGK)**

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiff Oberon Securities, LLC ("Oberon") brings this action against the defendants, Primary Health Properties PLC and its affiliate, PHP Property Management Services Limited (together, "PHP"), for breach of contract or, alternatively, quantum meruit. Oberon alleges that PHP failed to pay a fee of $40 million for Oberon's assistance with a takeover of another company that PHP conducted in 2025.

PHP has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the defendants' motion to dismiss is **denied in part and granted in part**.

## I.

Except where otherwise indicated, the following facts are drawn from allegations set out in the complaint and are accepted as true for purposes of this motion to dismiss.

## A.

In November 2024, Oberon, a New York-based investment bank, held separate conversations with two London-based real estate investment firms, PHP and Assura PLC ("Assura").[1] Compl. ¶ 13, ECF No. 5. In these conversations with Oberon, Assura expressed interest in "selling a significant portion of its real estate assets," and PHP expressed interest in "acquiring additional

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Oberon is a limited liability company organized under the laws of Delaware and with its principal place of business in New York, Compl. ¶ 7; the defendants are organized under the laws of and have their principal places of business in the United Kingdom, id. ¶¶ 8–9; and the amount in controversy exceeds $75,000, id. ¶ 10.

Oberon is a limited liability company and thus shares the citizenship of each of its members. Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990) (limited partnerships have the citizenship of their partners); see also Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012) (applying Carden to limited liability companies). Oberon had previously filed a substantively identical complaint in Oberon Securities, LLC v. Primary Health Properties PLC, No. 25-cv-9959 (S.D.N.Y.), but had indicated that at least two of its so-called "Class B" members were citizens of Sweden and India, id., ECF No. 24 at 2. "[D]iversity is lacking within the meaning of [28 U.S.C. § 1332(a)(2)] . . . where on one side there are citizens and aliens and on the opposite side there are only aliens." Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002). Although those Class B members forfeited their membership in Oberon in June and July 2026, post-pleading changes of citizenship cannot create diversity-of-citizenship jurisdiction. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570–71 (2004). Oberon therefore voluntarily dismissed its original action without prejudice and refiled the complaint in this action to cure those jurisdictional defects. Because Oberon's remaining members are all citizens of a State, the defendants remain citizens of the United Kingdom, and the amount in controversy exceeds $75,000, the Court has alienage jurisdiction under 28 U.S.C. § 1332(a)(2).

real estate assets."[2] Id. In late January 2025, Oberon conveyed to PHP that Oberon had found a potential seller, and the two entered negotiations for a proposed finder's fee agreement. Id. ¶ 14.

On February 6 and 7, 2025, PHP and Oberon signed a mergers-and-acquisitions engagement agreement (the "Agreement"), which provided that PHP would pay Oberon one percent of the value of any transaction that Oberon facilitated between PHP and an Oberon Identified Party. Id. ¶ 15. The Agreement defined a "transaction," in relevant part, as "an acquisition . . . of all or a material portion of the assets or any securities (whether by way of tender or exchange offer . . . ) of an Oberon Identified Party . . . ." Defs.' Mem. Law Supp. Mot. Dismiss ("Defs.' Mem."), Ex. 1, ECF No. 24-1.[3] The Agreement went on to define an Oberon Identified Party as:

> Any party (along with its subsidiaries, affiliates and assigns) (i) which Oberon has identified and introduced to the Company [PHP], or (ii) in respect of which Oberon has rendered advice to the Company, (iii) with

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

[3] Although the complaint does not attach or incorporate by reference the Agreement—the Agreement itself was attached as an exhibit only to the defendants' motion—the Court may consider it on a motion to dismiss because the complaint "relies heavily upon [the Agreement's] terms and effect," rendering the Agreement "integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "In most instances where this exception is recognized, the incorporated material is," as here, "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

> which Oberon has held discussions or furnished information regarding financing or any other transaction or (iv) which was introduced to Company by any other party considered an Oberon Identified Party as defined in (i) – (iii) . . . .

Id.

Immediately after signing the Agreement, Oberon shared with PHP information about Assura's available real estate portfolio. Id. ¶ 16. PHP, at the instruction of its chief executive officer Mark Davies, began assessing the portfolio. Id. Also at Davies's instruction, Oberon continued to communicate with Assura, inquiring about enlarging the size of the for-sale portfolio, but did not reveal to Assura who the potential buyer was. Id. ¶ 17.

On February 14, two other financial firms disrupted this developing sale. Kohlberg Kravis Roberts & Co. and Stonepeak Partners ("KKR/Stonepeak") announced a joint takeover bid to acquire Assura outright through a tender offer for 100% of Assura's common stock. Id. ¶ 18. Four days later, Davies informed Oberon that PHP would stop pursuing the sale of Assura's real estate portfolio. Id. ¶ 19. In mid-March, PHP announced its own competing takeover bid—also a tender offer—for Assura. Id. ¶ 20. Eventually, PHP's bid won out against KKR/Stonepeak's takeover bid; in August 2025, Assura shareholders accepted the PHP offer. Id. ¶ 23.

But Oberon's involvement in the PHP-Assura transaction did not end in February when PHP said it would no longer pursue the smaller real estate purchase. Between PHP's takeover bid announcement in March and the completion of that takeover in August, PHP and Oberon continued to communicate

about that transaction. The complaint alleges, for example, that in those months, Davies shared with Oberon "confidential, non-public information concerning the PHP tender offer"; solicited Oberon's assistance in finding additional investors to support PHP's bid; and "discussed information with Oberon concerning a review of a PHP-Assura merger by the Competition and Markets Authority . . . of the U.K. Government, including a non-public meeting between Davies and" British regulators. Id. ¶¶ 21–22.

When PHP completed its takeover of Assura in August, it abruptly ended its relationship with Oberon. Responding to an inquiry from Oberon about payment of the finder's fee, Davies asserted that PHP "ha[s] no M&A Agreement with Oberon." Id. ¶ 24. Oberon replied with a copy of the Agreement, and on September 5, 2025, PHP terminated the Agreement and claimed it did not owe Oberon anything. Id. ¶¶ 25–26.

**B.**

Oberon filed this action in August 2026, seeking damages for breach of contract or, if that claim should not succeed, for quantum meruit. Id. ¶¶ 27–36. PHP moved to dismiss. ECF No. 23. In its response, Oberon indicated that it would seek leave to amend its complaint to remove the quantum-meruit claim, and Oberon did not respond to PHP's arguments regarding that second alternative claim. See Pl.'s Mem. Law Opp'n Mot. Dismiss ("Opp'n") 8, ECF No. 25.

## II.

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

"For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers, 282 F.3d at 152.

**III.**

The complaint asserts two causes of action: breach of contract or, in the alternative, quantum meruit. Oberon did not respond to PHP's arguments directed at the quantum-meruit claim and stated that it would seek leave to amend to remove that claim. The quantum-meruit claim is therefore deemed abandoned and is dismissed. See Felix v. City of New York, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). The Court turns to the breach-of-contract claim.

To state a claim for breach of contract under New York law, Oberon "must allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Carlyle Aviation Mgmt. Ltd. v. Frontier Airlines, Inc., 711 F. Supp. 3d 225, 235–36 (S.D.N.Y. 2024).

In dispute is whether the complaint plausibly alleges that the conditions triggering PHP's obligations to pay Oberon the fee under the Agreement were satisfied. Neither party contests the existence of the Agreement. Nor does either party doubt that, if Oberon performed, PHP's failure to pay Oberon would constitute a breach resulting in damages.

In favor of dismissal, PHP makes two arguments. First, it contends that the Agreement required Oberon to "identify and introduce" Assura to PHP. Defs.' Mem. 1. Because Oberon was only an intermediary between the two real estate firms and never actually placed them in contact with each other—

indeed, Oberon never revealed to Assura that PHP was the potential buyer of the real estate portfolio—Oberon could not have "introduced" Assura to PHP. Defs.' Mem. 5–7. "At most," PHP argues, "the Complaint alleges . . . that Oberon identified Assura to PHP but does not allege that Oberon . . . brought the two companies together." Id. at 7 (emphasis in original).

The plain text of the Agreement, however, shows why this argument fails. The parties' dispute turns on whether Assura qualifies as an "Oberon Identified Party." The definition for such a party sets out several routes. One of those tests—the first one in the Agreement's language—is whether Oberon identified and introduced Assura to PHP. But there are other ways in which Assura might have been an Oberon Identified Party. As Oberon notes in its response brief, Assura might have been a party "(ii) in respect of which Oberon has rendered advice to the Company, (iii) with which Oberon has held discussions or furnished information regarding financing or any other transaction." Defs.' Mem., Ex. 1.[4] The contractual language joins the first test—the "identified and introduced" test—with tests (ii) and (iii) using an "or," not an "and." Although Oberon may never have "introduced" Assura to PHP, Oberon need not have done so to satisfy the definition of an Oberon Identified Party under clauses (ii) and (iii). The complaint plausibly alleges that Oberon rendered advice to PHP concerning Assura, satisfying clause (ii). Compl. ¶ 16. The

[4] It is unclear whether clauses (ii) and (iii) are disjunctive or conjunctive. For present purposes, however, that question is irrelevant, because Oberon pleads sufficient factual allegations to meet either or both standards.

complaint also alleges that Oberon held discussions with Assura regarding a potential transaction, satisfying clause (iii). Id. ¶ 17.[5]

PHP next argues that whatever Oberon's role in arranging a potential consensual sale of some Assura real estate assets, the complaint does not plausibly allege that Oberon meaningfully participated in the takeover of Assura itself. According to PHP, to recover a finder's fee under New York law, there must be a causal, continuing connection between the finder's services and the eventual transaction. See Defs.' Mem. 7–8. And because Oberon served only briefly as an intermediary for one unrealized transaction—but did not alert PHP to the possibility of or substantially contribute to the eventual takeover—PHP contends that Oberon cannot fulfill this requirement.

Oberon offers a different interpretation of New York contract law. In Oberon's view, unless the parties to a contract write such a requirement into their agreement, a finder need not be the proximate or "procuring cause" of a transaction to receive a fee. Opp'n 12–13. It is sufficient, Oberon argues, that the finder plays some role in the eventual transaction, even an indirect or

---

[5] Although the complaint does not specify which definition of an Oberon Identified Party Assura satisfies, that lack of clarity is not fatal. Rule 8 requires pleading facts, not legal theories. See Johnson v. City of Shelby, 574 U.S. 10, 11–12 (2014) (per curiam). The complaint alleges the conduct supporting Oberon's performance, Compl. ¶¶ 16–17, and need not have labeled which prong of the definition that conduct met. In any event, the defendants did not press this argument until their reply brief—having instead assumed the complaint alleged performance by introduction—and the Court declines to consider the new argument now. See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009).

remote one, provided the contract does not contain language necessitating more substantial participation. And the Agreement at issue in this case does not include any such requirement. See id.

Nothing turns on the answer to this legal question at this stage in the litigation because Oberon has pleaded sufficient factual allegations to state a claim under either test. The complaint supplies sufficient detail about Oberon's involvement in the takeover bid—not just the real estate sale—to allege plausibly that Oberon's services met the more demanding standard that PHP claims New York law requires. There were multiple conversations between Oberon and Davies for PHP concerning the takeover bid, including one in which Davies allegedly shared nonpublic information and another in which he discussed private details about the British government's review of the acquisition. Compl. ¶¶ 21–22. PHP also sought Oberon's assistance in fundraising for the bid. Id. ¶ 21. And Davies had planned to meet with Oberon representatives while visiting New York in September 2025, a meeting that Davies canceled after Assura accepted the bid in August. Id. ¶ 22.

For these reasons, the defendants' motion to dismiss the breach-of-contract claim is **denied**.

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss the complaint is

**denied** with respect to Oberon's breach-of-contract claim and **granted** with respect to Oberon's quantum-meruit claim. Oberon's quantum-meruit claim is **dismissed without prejudice**.

The Clerk is respectfully directed to close ECF No. 23.

**SO ORDERED.**

**Dated:** **New York, New York**
**August 14, 2026**

/s/ John G. Koeltl

**John G. Koeltl**
**United States District Judge**